UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-12096-GAO

LYNN BRENNER,
Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY and
SOUTHBORO MEDICAL GROUP, INC.,
Defendants.

ORDER
March 29, 2013

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and Recommendation with respect to the defendants' motions to dismiss. The plaintiff and the defendant Southboro Medical Group ("SMG") have each filed objections to the Report and Recommendation. The defendant Metropolitan Life Insurance Company ("MetLife") does not object.

I.      Counts I, II, III, IV, VII, VIII (State Law Claims)

The plaintiff objects to the dismissal of her state law claims for two reasons.

First, she contends that the magistrate judge failed to recognize that her state law claims and ERISA claims arise from different facts. While I agree that it is appropriate to distinguish between the two sets of facts, I find no indication that the magistrate judge did otherwise.

Second, the plaintiff claims that the magistrate judge failed to conduct a proper ERISA preemption analysis. While it may be true that the facts of Zipperer v. Raytheon Co., Inc. are distinguishable from the facts of this case, the First Circuit's ruling that preemption is

appropriate when state law claims are "inseparably connected" to the ERISA plan at issue because they "ultimately depend on an analysis" of the plan is controlling precedent and consistent with Supreme Court preemption jurisprudence. 493 F.3d 50, 54 (1st Cir. 2007) (citing Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 795 (1st Cir. 1995)). The cases cited by the plaintiff, while somewhat persuasive, are not controlling.

Further, as the court noted in Rogers v. Rogers and Partners, Architects, Inc., No. 08-11730-NG, 2009 WL 5124652 (D. Mass. July 27, 2009), the First Circuit's decisions in Carlo and Vartanian v. Monsanto Co., 14 F.3d 697 (1994), holding that misrepresentation claims were preempted because they required analysis of an ERISA plan, remain unaffected by the Supreme Court's ruling in N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995). This is especially true in a case like this one, where a plaintiff has brought claims against an insurer and plan administrator, not against an independent third party. See Giannetti v. Mahoney, 218 F. Supp. 2d 8, 14 (D. Mass. 2002).

The magistrate judge properly concluded that the assessment of the plaintiff's state law claims and damages would depend on an analysis of the Plan. First, as the magistrate judge notes, Massachusetts law requires a showing of justifiable reliance to prevail on a claim for negligent misrepresentation, and in this case, whether or not the plaintiff's reliance was justifiable requires examination of the Plan. The plaintiff's objections concerning consensus that SMG's representations were incorrect are impertinent.

The plaintiff also argues unconvincingly that assessment of damages would not require analysis of the Plan because the full amount of benefits due under the Plan was already disclosed in email correspondence. Such reasoning is entirely misleading. This is not a case where a plan administrator misrepresented the nature of the benefits under a plan such that damages would

2

consist of the particular benefits erroneously promised. Here the allegations are that SMG misrepresented to the plaintiff that coverage still existed and that the same Plan benefits continued. It is irrelevant that Plan terms were quoted in emails between the parties. In assessing damages, the Court would need to examine the Plan to determine to what benefits the plaintiff would have been entitled had the Plan been in effect at the time of her husband's death. Cf. Rogers, 2009 WL 5124652 at *14 ("[T]he amount of benefits payable under the policy would have varied depending upon the circumstances of the individual insured," for example, "whether the individual was 70 years old or more. . . . Consequently, any determination as to the death benefits that Rogers would have been entitled to under the Contract at the time of her husband's death would depend on an analysis of the Insurance Contract.") (citing Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 52 ("ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan.")).

II.    Count V (Section 1132 (a)(1)(B))

The plaintiff objects to the magistrate judge's recommendation to dismiss Count V because it is based on the erroneous understanding that the plaintiff seeks extra-contractual damages. However, the magistrate judge was correct in making such a finding.

The plaintiff claims that she is seeking to "enforce [her] rights," pursuant to 29 U.S.C. § 1132(a)(1)(B), to have received notice of her right to convert and to have chosen to convert to a new policy. She contends that because the right to convert is included in the policy terms, she technically seeks a benefit due to her under the contract, but this is nothing more than an unsuccessful attempt to alter her claim as pled so as to avoid dismissal. (See Am. Compl. ¶ 62 (dkt. no. 16) ("Plaintiff suffered damages in an amount equal to the benefits she . . . would have received under a new individual policy had Dr. Brenner converted to an individual policy.").)

Entitlement to benefits under a *new* policy is precisely the kind of extra-contractual relief that is unavailable under Section 1132(a)(1)(B). Furthermore, at the time she filed suit, the plaintiff had no right under the Plan to receive notice of the option to convert because the Application Period had long passed.

The plaintiff again claims that the magistrate judge conflates the facts underlying her state law claims and those underlying her ERISA claim. She points to a reference to <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 515 (1996), where the Supreme Court held that the plaintiffs, who had been terminated from their employee welfare benefit plan prior to filing suit, could not proceed under Section 1132(a)(1) because they had no benefits due to them. The relevant time period is when the claims were brought. It is not, as plaintiff seems to assert, when the plaintiff should have received notice of her right to convert.

As the magistrate judge indicates, the analysis of Count V applies to MetLife. Therefore, although MetLife has not moved to dismiss Count V, this Count will be dismissed as to both SMG and MetLife.

III.     Count VI (Section 1132(a)(3))

SMG objects to the magistrate judge's recommendation to deny its motion to dismiss Count VI on the basis that the plaintiff has failed to adequately plead that SMG is a fiduciary. I agree fully with the magistrate judge's analysis concerning this Count. The plaintiff's factual allegations, as well as the Plan language, are sufficient to support a plausible claim that SMG acted as a fiduciary.

IV.    Conclusion

After careful review of the pleadings, submissions, and the parties' objections to the Report and Recommendation, I approve and ADOPT the magistrate judge's recommendation in its entirety, including the recommendation to dismiss Count V as to MetLife.

Accordingly, the defendants' Motions to Dismiss (dkt. nos. 18, 20) are GRANTED as to Counts I, II, III, IV, V, VII, and VIII, and DENIED as to Count VI.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

# United States District Court
# District of Massachusetts

LYNN BRENNER,
     Plaintiff,

     v.                      CIVIL ACTION NO. 11-12096-GAO

METROPOLITAN LIFE INSURANCE CO.,
SOUTHBORO MEDICAL GROUP, INC.,
     Defendants.

## *REPORT AND RECOMMENDATION ON DEFENDANT SOUTHBORO MEDICAL GROUP'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6) (#18) AND DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO DISMISS (#20)*

COLLINGS, U.S.M.J.

### *I. Introduction*

This action arises from a life insurance plan that the deceased, Dr. Alan

.

Brenner ("Dr. Brenner"), held through his employer Southboro Medical Group, Inc. ("SMG"). On November 28, 2011, Dr. Brenner's wife, Lynn Brenner ("Brenner"), filed a Complaint (#1), later amended (#16), against Metropolitan Life Insurance Co. ("MetLife") and SMG (collectively, "the defendants"). The amended complaint alleges claims of breach of contract (Count V) and breach of fiduciary duty (Count VI) under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., along with several state law claims: misrepresentation (Count I); promissory estoppel (Count II); breach of contract (Count III); breach of the implied duty of good faith and fair dealing (Count IV); violation of Mass. Gen. Laws ch. 176D (Count VII); and violation of Mass. Gen. Laws ch. 93A (Count VIII).

On May 17, 2012, the defendants filed separate motions to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6): SMG filed its Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(B)(6) (#18), along with a supporting memorandum of law (#19), and attached exhibits; MetLife filed its Motion to Dismiss (#20), along with a supporting memorandum of law (#21), to which it has appended as an exhibit a copy of the Certificate of Insurance (#21-1).   On June 7, 2012, Brenner filed her Opposition to Defendant Southboro Medical Group, Inc.'s Motion to Dismiss Amended

2

Complaint (#24), and her Opposition to Defendant Metropolitan Life Insurance Company's Motion to Dismiss (#25). On January 23, 2013, the Court held a hearing on the motions. With the record complete, the motions to dismiss are poised for resolution.

## II. Factual Background

The Court states the following facts as pleaded in the amended complaint. *See Zipperer v. Raytheon Co., Inc.*, 493 F.3d 50, 51 (1st Cir. 2007), *cert. denied*, 552 U.S. 1184 (2008).

On or about March 19, 2009, Dr. Brenner was employed by SMG and was a participant in SMG's life insurance plan ("the Plan"). (#16 ¶ 9) The Plan is an employee welfare benefit plan regulated by ERISA. (#16 ¶ 7) The insurer of the plan is MetLife. (#16 ¶ 7) The amended complaint alleges that SMG, at all times relevant, was the Plan Administrator and was responsible for the operation of the Plan. (#16 ¶ 7)

Brenner was the named beneficiary of Dr. Brenner's life insurance plan. (#16 ¶ 10) The Plan states that if a participant ceases active work due to injury or sickness, the participant's life insurance will continue for a period of up to nine (9) months. (#16 ¶ 11) The Plan contains a "Conversion Option" which provides that when a participant's life insurance ends, the participant

has the option to buy ("convert to") an individual policy of life insurance from MetLife during a defined "Application Period." (#16 ¶ 12) The Plan defines the "Application Period" for the "Conversion Option" by reference to the date when the plan participant receives "[w]ritten notice of the option to convert" (#16 ¶ 14) and further provides that in no event does the Application Period exceed 91 days from the date the life insurance ends.  (*Id.*)

Dr. Brenner stopped working on or about March 20, 2009.  (#16 ¶ 16) Dr. Brenner's life insurance ended nine months later, on or about December 20, 2009.  (#16 ¶ 17) Dr. Brenner died on March 31, 2010.  (#16 ¶ 19) The defendants provided no notice about the life insurance conversion option, nor did they advise Dr. Brenner or his wife that the life insurance would and did lapse on or about December 20, 2009.  (#16 ¶ 20) Rather, the defendants' "communication and conduct . . . misrepresented that the SMG Plan remained in full force and effect." (#16 ¶ 21)

On or about January 19, 2010, Brenner asked SMG to provide her with the amount of the premium that Dr. Brenner was required to pay for his portion of the life insurance premium payment. (#16 ¶ 22) On January 22, 2010, SMG responded by email and informed Brenner that the monthly premium for Dr. Brenner's continued life insurance under the SMG Plan was

$51.56. (#16 ¶ 22) At all times prior to Dr. Brenner's death, Brenner continued to pay this monthly life insurance premium.   (#16 ¶ 23) The defendants continued to accept all of these monthly life insurance premium payments. (#16 ¶ 24)

On or about March 29, 2010, Brenner asked the Plan Administrator about the amount of the benefit under Dr. Brenner's life insurance policy. (#16 ¶ 25) On or about March 30, 2010, the day before Dr. Brenner died, the Plan Administrator responded and informed Brenner that "'[t]he life insurance policy is through METLIFE and is for three times annual salary up to $500,000.'" (#16 ¶ 26) On or about April 5, 2010, after Dr. Brenner passed away, Brenner sent an email to the Plan Administrator to ask how she should deal with the issue of Dr. Brenner's life insurance.  (#16 ¶ 27) The administrator responded by email stating that SMG had just completed the company insurance form that is completed when someone has passed, but because of Dr. Brenner's age SMG needed to follow up with the insurance broker to clarify the age stipulation on the plan. (#16 ¶ 28) Brenner responded by email to ask if this meant she may not get anything from the life insurance policy. (#16 ¶ 29) The Plan Administrator responded that according to the broker, when a participant reaches the age of 65 the benefit is reduced to 65

5

percent. (#16 ¶ 30)

The defendants have refused to pay any life insurance benefits to Brenner under the Plan, on the grounds that Dr. Brenner's life insurance terminated on or about December 20, 2009, approximately three (3) months prior to his death. (#16 ¶ 31)

### III. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

"obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks, alteration and citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross "the line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Simply, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

### *IV. Discussion*

Both defendants move to dismiss all state-law claims (Counts I, II, III, IV, VII and VIII) on the grounds that the claims are preempted by ERISA. In addition, SMG moves to dismiss Brenner's ERISA-based claims (V and VI). The Court considers the parties' arguments *seriatim*.

7

### A. ERISA Preemption

Although "ERISA's preemption is not boundless, it is far reaching." *Zipperer*, 493 F.3d at 53. ERISA's preemption clause, section 514(a), 29 U.S.C. § 1144(a), provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." There is no dispute that the Plan at issue here is an employee benefit plan governed by ERISA, so the question presented is whether ERISA's preemption clause applies to Brenner's state-law claims.

A state "law 'relates to' an employee benefit plan 'if it has a connection with or reference to such a plan.'" *Zipperer*, 493 F.3d at 53 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (further citation omitted)). The Supreme Court has cautioned that courts should look to ERISA's purpose in conducting preemption analysis; the Court clarified that "ERISA's purpose was 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law.'" *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 51 (1st Cir. 2000) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 656 (1995)(further citation omitted)). The Supreme Court has identified three

8

categories of state laws that conflict with this purpose: "1) those that mandate employee benefit structures or their administration; 2) those that bind plan administrators to a particular choice; and 3) causes of action that provide alternative enforcement mechanisms to ERISA's own enforcement scheme." *Zipperer*, 493 F.3d at 53 (citing *Travelers*, 514 U.S. at 658-59). The First Circuit has further clarified that courts "must 'look beyond the face of the complaint' and determine the real nature of the claim 'regardless of plaintiff's . . . characterization.'" *Hampers*, 202 F.3d at 51 (quoting *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 5 (1st Cir. 1999)).

In the Court's view, the First Circuit's decision in *Zipperer* is dispositive. In *Zipperer*, a former employee alleged state law claims (negligence, equitable estoppel and negligent misrepresentation) against his former employer, Raytheon: the employer had provided an estimate of the employee's pension benefit, and based on that estimated benefit, the employee chose to retire. As it turns out, the employer had inaccurately overstated the benefit amount. The First Circuit rejected arguments that the claims were not preempted because the claims related only to the employer's "independent legal obligation to keep

9

proper records," *Zipperer,* 493 F.3d at 53 (internal quotation marks omitted),

and because the plaintiff purportedly sought "only negligence damages and not

reinstatement of promised benefits," *id.* The First Circuit reasoned:

> The complaint's three counts rely on the
> common claim that Raytheon's negligent
> recordkeeping led to his reliance on an erroneous
> estimate of his retirement benefits. In our view, even
> a narrow reading of section 514(a)'s 'related to'
> provision yields a conclusion that Zipperer's claims are
> preempted, and that is because the claims can only be
> evaluated with respect to Raytheon's recordkeeping
> responsibilities for the plan. Such responsibilities were
> part and parcel of Raytheon's plan administration.
> Subjecting Raytheon's plan administration to the state
> law scrutiny Zipperer seeks would conflict with
> ERISA's proscription against state law 'mandat[ing]
> plan administration' and would also impermissibly
> create 'an alternative enforcement scheme' to ERISA's
> own recordkeeping and reporting requirements.

*Zipperer,* 493 F.3d at 54 (alteration in original).

And so it is here. Brenner complains, among other things, that the

defendants "supplied false information to Dr. Brenner and Mrs. Brenner

concerning Dr. Brenner's enrollment in the SMG Plan," (#16 ¶34); made

promises that Dr. Brenner's life insurance remained in effect, (#16 ¶ 42); and

refused to pay life insurance proceeds in breach of the terms of a contract that

purportedly arose out of the Brenner's ongoing payment of life insurance

benefits, (#16 ¶ 48).  No matter how Brenner characterizes her various claims, the Court concludes that the state law claims "'ultimately depend on an analysis' of the ERISA plan at issue, to which the claims [are] thus 'inseparably connected.'" *Zipperer*, 493 F.3d at 54 (quoting *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 795 (1st Cir. 1995)).  Here, the Court would need to consult the Plan to determine, among other things, whether Brenner's reliance on SMG's representations was reasonable in view of language of the Plan.  *See, e.g., Cumis Ins. Society v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471-72, 918 N.E.2d 36, 47-48 (2009) (to prevail on a claim of negligent misrepresentation, plaintiff must establish "justifiable reliance" on the false information).  And any assessment of damages would invariably depend on an analysis of the Plan:

although Brenner asserts that the defendants refusal to pay any life insurance proceeds constitutes a breach of a separate contract based on SMG's email exchanges with the Brenners after December 20, 2009 (#16 ¶ 50), the very emails on which Brenner relies reference the Plan itself.  That is, the amended complaint alleges that the Brenners received emails stating, among other things, that: the monthly premium "under the SMG Plan was $51.56"; "'[t]he

life insurance policy is through METLIFE and [was] for three time annual salary up to $500,000'"; and that SMG had just completed the company insurance form and that because Dr. Brenner had reached the age of 65 the benefit of the plan was reduced by 65 percent. (*See* #16 ¶¶ 22-30) The First Circuit has found preemption under similar circumstances where the state law claim depends on the Plan for a determination of damages:

> If the [plaintiffs] were successful in their suit, the damages would consist in part of the extra pension benefits which [the employer] allegedly promised . . . . To compute these damages would require the court to refer to the [plan] as well as the misrepresentations allegedly made by [the employer]. Thus, part of the damages to which [the plaintiffs] claim entitlement ultimately depends on an analysis of the [plan]. To disregard this as a measurement of their damages would force the court to speculate on the amount of damages. Consequently, because the court's inquiry must be directed to the plan, the plaintiffs' claims are preempted . . . .

*Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 794 (1st Cir. 1995) (internal quotation marks, citation and footnote omitted).

Finally, the Court finds unpersuasive Brenner's argument that her state-law claims avoid preemption because they arose out of misrepresentations made after Dr. Brenner's life insurance coverage ceased. (*See* #25 at 6-7)  Looking through form to substance, Brenner's claim is that

but for SMG's misstatements, her husband would have remained enrolled in the Plan, and would have been eligible for Plan benefits.  There would be no cause of action if there were no Plan; the state law claims are thus "inseparably connected" to the ERISA Plan and its administration.  *Cf. Zipperer*, 493 F.3d at 54.

For all the above reasons, the Court shall recommend that Counts I, II, III, IV, VII and VIII[1] of the Amended Complaint be dismissed with prejudice.

### B. The ERISA Claims

SMG also moves to dismiss Brenner's ERISA-based claims, Counts V (Violation of 29 U.S.C. § 1132(a)(1)(B)) and VI (Violation of 29 U.S.C. § 1132(a)(3)).

### 1. Count V:  Claim under 29 U.S.C. § 1132(a)(1)(B)

ERISA provides several civil enforcement mechanisms.  In Count V of her amended complaint, Brenner seeks to assert a claim under the mechanism contained in 29 U.S.C. § 1132(a)(1)(B), which provides:

> A civil action may be brought—
> > (1) by a participant or beneficiary–

---

[1]

In Counts VII and VIII, Brenner seeks to assert claims under Mass. Gen. L. ch. 176D and Mass. Gen. L. ch. 93A. These claims are likewise preempted because, the Court concludes, they seek to provide alternative enforcement mechanisms to ERISA's enforcement scheme.  *See Hotz v. Blue Cross and Blue Shield of Massachusetts, Inc.*, 292 F.3d 57, 60-61 (1st Cir. 2002) (claims under chapters 176D and 93A preempted by ERISA).

. . .

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a)(1).

SMG maintains that Count V should be dismissed to the extent that it seeks benefits under the plan because, although the Plan identifies SMG as the "plan administrator," (*see* #19, Exh. 1 at 55), SMG did not have authority to award benefits under the Plan, and so is not a proper party defendant. SMG also contends that to the extent that Brenner seeks relief under this count other than "benefits due" under the Plan, the count must be dismissed because such extra-contractual relief is not available under this provision.

In response, Brenner makes two arguments. First, she notes that the Plan itself identifies SMG as "plan administrator"; the Plan further provides that "[i]n carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits." (*See* #19, Exh. 1 at 59). Second, she maintains that she is not seeking "to recover benefits due to [her] under the terms of [the] plan," 29 U.S.C. § 1132(a)(1)(B), but rather "to enforce [her] rights under the terms of

14

the plan," *id.* Specifically, she contends that "Count V seeks to enforce . . . [the] contractual right to have received written notice of [the] life insurance conversion option from the SMG Plan Administrator, in accordance with the plan terms, and to recover damages resulting from SMG's breach in that regard." (#24 at 12)   The Court need only consider the second of the arguments, *viz.*, that Brenner is not seeking "benefits due" under the Plan. Both Supreme Court and First Circuit precedent precludes this sort of claim under 29 U.S.C. § 1132(a)(1)(B): the provision "provides a remedy to 'secure *benefits* under the plan rather than *damages* for a breach of the plan." *Hampers*, 202 F.3d at 51 (quoting *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 198 (1st Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998)). That is, "'the Supreme Court has stressed that ERISA does not create compensatory or punitive damage remedies where an administrator of a plan fails to provide the benefits due under that plan.'" *Id.* (quoting *Turner,* 127 F.3d at 198 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985))). Because Brenner has expressly eschewed any claim to "benefits due" under the Plan, the Court concludes that Brenner has failed to state a cause of action under 29 U.S.C. § 1132(a)(1)(B), and that Count V must be dismissed against SMG.

15

The Court adds that, in any event, Brenner's characterization of her own claim leads the Court to conclude that her ERISA cause of action lies, if at all, under 29 U.S.C. § 1132(a)(3). The Supreme Court has observed that where "plaintiffs . . . could not proceed under [Section a(1)] because they were no longer members of [their] plan and, therefore, had no benefits due [them] under the terms of [the] plan [pursuant to Section a(1)], . . . [t]hey must rely on [Section a(3)] or they have no remedy at all.'" *LaRocca v. Borden, Inc.,* 276 F.3d 22, 29 (1ˢᵗ Cir. 2002) (quoting *Varity Corp. v. Howe,* 516 U.S. 489, 515 (1996)) (alteration in original)(footnote omitted). Thus, "federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to [29 U.S.C. § 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under [29 U.S.C. § 1132(a)(3)]." *Id.* at 28.

The short of it is that, no matter how Brenner characterizes her claims, ERISA permits damages only for benefits due under the Plan and does not permit extra-contractual damages:  because "Congress wanted to protect contractually defined benefits," *id.* at 30, "ERISA's civil enforcement provisions and their subsequent judicial interpretation require [ ] [district courts] to craft

a remedy limited to the benefits due to the plaintiffs under the Plan," *id.* at 31.[2]

## 2. Count VI:  Breach of fiduciary duty under 29 U.S.C. § 1132(a)(3)

Under Count VI, Brenner asserts a breach of fiduciary duty under 29

U.S.C. § 1132(a)(3), which provides:

> A civil action may be brought–
> . . .
> (3) by a participant, beneficiary, or fiduciary (A) to
> enjoin any act or practice which violates any provision
> of this subchapter or the terms of the plan, or (B) to
> obtain other appropriate equitable relief (i) to redress
> such violations or (ii) to enforce any provisions of this
> subchapter or the terms of the plan[.]

29 U.S.C.A. § 1132(a)(3).

SMG argues that Count VI fails as a matter of law because SMG was not acting

in a fiduciary capacity.

"To establish a breach of fiduciary duty based on alleged

misrepresentations about coverage under an ERISA plan, Plaintiff must show

that (1) Defendants were acting in a fiduciary capacity and that (2) they made

---

[2] In the next section, the Court considers Brenner's claim under 29 U.S.C. § 1132(a)(3). At this juncture, though, the Court notes that "extra-contractual damages" are also unavailable under 29 U.S.C. § 1132(a)(3). *See, e.g., Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.), *cert. denied*, 488 U.S. 909 (1988). Nevertheless, in *LaRocca v. Borden, Inc.*, 276 F.3d 22, 29 (1st Cir. 2002), which concerned a claim under 29 U.S.C. § 1132(a)(3), the First Circuit affirmed a district court remedy amounting to "constructive reinstatement" under the Plan–a remedy that was itself limited to "benefits due" under the plan. The parties have not addressed the question whether a remedy is available to Brenner under this provision if she is not seeking "benefits due" under the Plan, and the Court does not address it further.

17

a material misrepresentation or omission (3) on which Plaintiff relied to her detriment." *Bell v. Pfizer Inc.*, 499 F. Supp.2d 404, 410 (S.D.N.Y. 2007).  At this stage of the proceedings, the Court concludes that the amended complaint has sufficiently alleged facts to support a plausible claim of breach of fiduciary duty.

First, the amended complaint alleges that SMG, at all times relevant, was the Plan Administrator and was responsible for the operation of the SMG Plan. (#16 ¶ 7)  Second, the Plan itself identifies SMG as the "plan administrator," (*see* #19, Exh. 1 at 55), and further provides that "[i]n carrying out their respective responsibilities under the Plan, *the Plan Administrator and other Plan fiduciaries* shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits." (*See* #19, Exh. 1 at 59) (emphasis added).  The Court further concludes that the factual allegations are sufficient to support a plausible claim that SMG was acting in a fiduciary capacity when it responded to questions about Dr. Brenner's eligibility for continued coverage:  under ERISA, "[a]n entity is a fiduciary with respect to an ERISA plan 'to the extent' that, among other things, it 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Bell*, 499 F. Supp.2d at 410 (quoting 29 U.S.C. §

18

1002(21)(A)).  *See also Mertens v. Hewitt Associates*, 508 U.S. 248, 251
(1993) ("The statute provides that not only the persons named as fiduciaries
by a benefit plan, ...but also anyone else who exercises discretionary control or
authority over the plan's management, administration, or assets..., is an ERISA
'fiduciary.'") (internal citations omitted).  Further, "[t]he Supreme Court has
held that an employer engages in plan administration, and therefore acts as a
fiduciary, when it 'answer[s] beneficiaries' questions about the meaning of the
terms of a plan so that those beneficiaries can more easily obtain the plan's
benefits.'" *Bell*, 499 F. Supp.2d at 410 (quoting *Varity Corp. v. Howe*, 516 U.S.
489, 502-03 (1996)).  Here, the claim is premised on SMG's responses to
Brenner's queries about continuing coverage under the Plan:   Brenner
complains, among other things, that SMG's "communications and conduct at
all times prior to Dr. Brenner's death misrepresented that his participation in
the SMG Plan remained in full force and effect, and misrepresented that Dr.
Brenner's group life insurance policy remained intact."  (#16 ¶ 21) The Plan
itself gives the Plan Administrator (SMG) "discretionary authority to interpret
the terms of the Plan," (#19, Exh. 1 at 57), and the Plan states "if you have any
questions about your Plan, you should contact your Plan Administrator," (#19,
Exh. 1 at 58).

Although it may ultimately be the case that SMG's actions might more fairly be deemed "ministerial" rather than "discretionary," *cf. Livick v. The Gillette Co.*, 524 F.3d 24, 30 (1st Cir. 2008) (providing estimates or calculations of future benefits not a fiduciary task), the Court need not accept SMG's characterization of SMG's actions at this stage of the pleadings: it is enough for present purposes that the Plan itself requires the Plan Administrator to answer questions and grants the Plan Administrator discretionary authority to interpret the terms of the Plan.

The Court notes, incidentally, that each of the cases on which SMG relies to support its motion to dismiss Count VI (*see* # 19 at 16) involves appeals from the grant of summary judgment, not the grant of a motion to dismiss. *See, e.g., Livick,* 524 F.3d at 28 (reviewing grant of summary judgment); *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102 (1st Cir. 2002) (reviewing grant of summary judgment on breach of fiduciary duty claim); *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202 (1st Cir. 2002) (same).

## V. Recommendations

For all the above reasons, the Court recommends that Defendant Southboro Medical Group's Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(B)(6) (#18), be granted in part and denied in part, and that

Counts I, II, III, IV, V, VII and VIII be dismissed with prejudice. The Court further recommends that Metropolitan Life Insurance Company's Motion to Dismiss (#20) be granted, and that Counts  I, II, III, IV, VII and VIII be dismissed with prejudice.[3]

## *VI. Review by the District Judge*

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,*

---

[3]
    MetLife has not moved to dismiss Count V. However, because the reasoning above, *supra* section IV.B.1, applies equally to MetLife, the Court also recommends dismissing Count V against MetLife.

21

616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

March 6, 2013.